UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREN T. MONCRIEF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:16-cv-00282-LMM |
| | ) | |
| ASHTON GARDENS ATLANTA, | ) | |
| LLC and BRAD SCHREIBER, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR STIPULATED JUDGMENT APPROVING FLSA SETTLEMENT AGREEMENT

Plaintiff Lauren T. Moncrief ("Plaintiff" or "Moncrief") and Defendants Ashton Gardens Atlanta, LLC ("AGA") and Brad Schreiber ("Schreiber") (collectively "Defendants") (together, the "Parties"), by and through their respective undersigned counsel, hereby file this Joint Motion for Stipulated Judgment Approving FLSA Settlement Agreement.  In support of their joint motion, the Parties state as follows:

## STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS

Moncrief worked under the job titles of "Line Cook" and "Kitchen Lead" (or "Lead Cook", as referred to by Defendants) for AGA, a company that provides space

for special events and whose culinary team prepares meals for the special events held at its facilities (such as wedding receptions and banquets).  Plaintiff brought this action against Defendants to recover alleged unpaid minimum wages, overtime pay, liquidated damages, prejudgment interest, costs, and attorney's fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  In addition to her federal causes of action, Plaintiff asserted pendent state law claims seeking payment for alleged hours worked which she contends arose out of the same set of operating facts as her FLSA claims.  These state law claims were: (1) breach of contract, (2) quantum meruit, and (3) promissory estoppel.  Defendants denied all of Plaintiff's claims, denied that Plaintiff worked any "off the clock" hours as a Line Cook, and contended that Plaintiff was exempt from the overtime laws when she was promoted from Line Cook to Lead Cook.  The Parties agreed to settle the case and now request this Court's entry of a stipulated judgment approving the settlement agreement.[1]

    A.    <u>Pleadings and Pre-Trial Motions.</u>

---

[1] The parties request approval because the settlement resolves Plaintiff's FLSA claims.  The vast majority of hours at issue in Plaintiff's pendent state law claims were duplicative of the hours allegedly covered by Plaintiff's FLSA claims, and Plaintiff, as referenced in the attached Settlement Agreement, has released Defendants regarding her FLSA and state law claims.  *See* Agreement at Paragraph C.

On January 29, 2016, Moncrief filed a Complaint against Defendants alleging violations of the FLSA and seeking recovery for alleged unpaid minimum wages, unpaid overtime compensation, liquidated damages, and attorney's fees and costs, as well as pendent state law claims.  [Doc. 1] The Complaint alleges that Moncrief was denied minimum wages and contractual wages for straight time and overtime worked "off-the-clock" and was subsequently misclassified as exempt under the FLSA when Defendants contend Plaintiff's position was changed from being an hourly-paid, non-exempt employee as a Line Cook, to a salary-paid, exempt employee as the Lead Cook.

Defendants answered alleging numerous affirmative defenses, including but not limited to asserting that Plaintiff was exempt from the FLSA's overtime pay requirements during her salary-paid employment as a "Lead Cook."  [Doc. 12]

B.    Discovery.

On April 20, 2016, Plaintiff served Defendants with her first requests for production of documents.  [Doc. 11] Subsequently, the Parties exchanged initial disclosures.  [Docs. 13 and 16] On June 29, 2016, Plaintiff served Defendants with her first set of interrogatories.  [Doc. 17] On August 5, 2016, Defendants served Plaintiff with their first set of written discovery requests.  [Doc. 21] On or about

August 16, 2016, Plaintiff received Defendants' partial document production responsive to her first requests for production of documents. The Parties continued to communicate regarding Defendants' production of the remaining documents requested. Also on August 16, 2016, the Parties moved the Court for an extension of the discovery period, anticipating additional discovery would be received and sought by the Parties, and to allow the Parties time to resolve any outstanding discovery issues, as well as to engage in settlement discussions. [Doc. 22] On August 17, 2016, the Court granted the Parties' motion to extend the discovery period. [Doc. 23] On August 31, 2016, Plaintiff served Defendants with her first set of requests for admission. [Doc. 24]

      C.    <u>Settlement</u>.

The parties engaged in initial settlement communications in April, 2016, when Defendants communicated that they may be submitting to Moncrief a settlement offer. In response, Moncrief informed Defendants that she would be serving document requests early so as to ensure receipt of her purported time and pay records in order to properly evaluate the offer. On June 30, 2016, Defendants served Moncrief with an Offer of Judgment under Fed. R. Civ. P. 68. Moncrief did not accept the Offer of Judgment. On August 16, 2016, Moncrief sent Defendants an

initial settlement demand inclusive of fees and costs.  Settlement communications continued, with Defendants submitting a second offer on September 1, 2016, inclusive of fees and costs in response to Plaintiff's demand.

Ultimately, on September 16, 2016, the Parties reached agreement to Defendants' payment to Plaintiff of $28,500, inclusive of fees and costs, and on September 22, 2016, the Parties reached a final agreement as to all material terms of settlement as set forth in the Settlement Agreement and Release (the "Agreement") attached hereto as Exhibit A.  Under the Agreement, without admitting liability, Defendants agree to pay the total amount of $28,500, including payment to Moncrief net of fees and costs of $9,500 ($4,750 for alleged back minimum and overtime wages, and $4,750 for alleged liquidated damages), and payment to Moncrief's counsel of $19,000 for attorney's fees and costs.  The Parties expressly agreed to jointly submit the Agreement to this Honorable Court requesting the Court's approval of settlement.[2]

---

[2] This Court has approved a settlement agreement substantially similar to the Agreement in this case, as submitted by undersigned Plaintiff's counsel in *Wiley, et al. v. R2S2 Management, Inc., et al.*, Case No. 1:14-CV-02692-LMM, Doc. 28-1 and Doc. 30 (N.D. Ga. Apr. 30, 2015).

## **ARGUMENT AND CITATION OF AUTHORITY**

In order to have an enforceable release of FLSA claims in this Circuit, either the Court or the U.S. Department of Labor must review and approve agreements settling alleged violations of the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with the approval of the Court or the Secretary of Labor). Because the Agreement was not made under the supervision of the Secretary of Labor, "it is valid only if the district court enter[s] a 'stipulated judgment' approving it." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013) (citing *Lynn's Food*, 679 F.2d at 1352-54). Accordingly, the Parties are submitting a copy of the Agreement for the Court's review, ratification, and entry of stipulated judgment approving it.

In order to approve a settlement of overtime claims proposed by an employer and an employee, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food*, 679 F.2d at 1355. If a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of

back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## I.   APPROVAL OF PAYMENT TO PLAINTIFF

There is a strong presumption in favor of finding a settlement fair.  *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").  In determining whether the settlement is fair, adequate, and reasonable, courts may (but are not required to) examine the following factors that are also used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See Leverso v. SouthTrust Bank of Alabama, Nat'l Assoc.*, 18 F.3d 1527, 1530-31, n.6 (11th Cir. 1994); *Garcia v. Riccy's Landscaping Servs., Inc.*, No. 6:08-cv-706-Orl- 28GJK, 2009 WL 347418, at *2 (M.D. Fla. Feb. 11, 2009).

1.  <u>The Existence of Collusion</u>.

In July, 2016, without admitting liability, Defendants provided Moncrief with their purported time records of her hours worked as a Line Cook, including overtime hours, as well as their calculations of potential overtime damages that could be owed to Moncrief if Defendants did not succeed on their exemption defenses during her period of working as a Lead Cook.  Defendants provided this calculation of potential damages based on a 40-hour workweek at the time and one half calculation. Throughout this litigation, Defendants have insisted that Moncrief was paid all wages owed to her and that she was properly classified as exempt in her position as Lead Cook, but even if held to be non-exempt, Moncrief's claimed estimated hours worked were inflated, Moncrief could not establish a "willful" violation in order to add a third year to the recovery period, and Defendants would prevail on their "good faith" defense to any liquidated damages.  Throughout this litigation, Moncrief has maintained diametrically opposing positions on each issue.

As set forth above, the Parties engaged in extensive and continued settlement negotiations throughout this litigation before ultimately reaching a settlement agreement.  The final settlement amount of $9,500 net of fees and costs to be paid to Moncrief is more than 230% (more than double) of the $4,009.56 amount that

Defendants contend to be the maximum possible damages that Moncrief could ever be awarded if entitled to overtime on her estimated or "projected" overtime hours worked as informed by the hours recorded as worked by Moncrief during the time Defendant classified her as non-exempt.  Thus, the settlement in this case is the ultimate result of arms-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes by counsel, and represents a compromise between the legal positions taken by the Parties in this litigation.  The settlement is fair, the payment to Moncrief is equitable, and there is no evidence of collusion.

       2. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>.

The Agreement allows Moncrief to recover a substantial recovery now, without suffering the delay and risk of litigating her claims.  In this case, further litigation, including continued discovery and depositions, anticipated cross-motions for summary judgment, and potential appeals, could drag on for years and require the expenditure of a tremendous amount of resources.

       3. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>.

This factor considers whether the parties have had the opportunity to fully evaluate the claims.  *Carnegie v. Mut. Sav. Life Ins. Co.*, No. Civ. A. CV-

99S3292NE, 2004 WL 3715446, *22 (N.D. Ala. Nov. 23, 2004); *Meyer v. Citizens and S. Nat'l Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) (*citing Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983)).

In this case, as summarized above, the Parties exchanged discovery requests, and Defendants produced documents related to Moncrief's job duties, pay, and hours worked, and may have been required to produce additional documents responsive to Moncrief's requests had the case not settled.  Moncrief's counsel also prepared for the anticipated depositions of witnesses.  As a result of these efforts, the Parties have had sufficient information upon which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial.

4. The Probability of Moncrief's Success on the Merits.

Defendants asserted throughout this litigation that Moncrief was paid all wages owed to her and that she was exempt from the FLSA's overtime pay requirements in her position of Lead Cook, but if owed any overtime wages at all, she is only owed overtime wages for her alleged misclassification period as a Lead Cook.  Defendants further argued that Plaintiff was subject to the FLSA's two-year statute of limitations period, not the three-year statute of limitations period applicable to willful violations of the FLSA.  Defendants primarily relied upon their

10

interpretations of *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988), and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-30 (1985), to support their position that Plaintiff will not be able to establish that Defendants acted willfully in order to add the third year to the recovery period.

Conversely, Moncrief asserted throughout this litigation that she was non-exempt during her entire employment period working at Ashton Gardens Atlanta, that she was not paid for all hours worked during the time Defendants classified her as non-exempt, and that she was not paid overtime premiums for all of her hours worked over 40 during the time that Defendants classified her as exempt from the FLSA's overtime requirements.  Further, Moncrief's Complaint alleged that her supervisor prevented her from entering actual hours worked and instead entered Moncrief's time for her at less than all hours worked, and Moncrief therefore contended that under Eleventh Circuit precedent in *Allen v. Bd. Of Public Educ. For Bibb County*, 495 F.3d 1306, 1314-17 (11th Cir. 2007), *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 469-70 (11th Cir. 1982), and *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973), the three-year statute of limitations would apply in this case.  Even if only the two-year statute of limitations applied, Moncrief contended that she could nonetheless recover under the two-year statute of

limitations period pursuant to the Eleventh Circuit's decision in *Knight v. Columbus, Ga.*, 19 F.3d 579, 585 (11th Cir. 1994), holding that each regular pay date that does not contain the required overtime premium creates a new cause of action, and thus if the pay date is within two years preceding a complaint filing date (even if the work weeks were not), that pay date presents a violation falling within the FLSA's automatic two year limitations period.  As Plaintiff alleged in this case, Plaintiff had a regular pay date within two years of the Complaint filing date for one or more weeks in which she worked overtime without receiving required overtime premiums.

The Parties therefore disagree on the probability of Moncrief's success on the merits both as to liability and damages.

5. The Range of Possible Recovery.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As stated above, the Parties dispute the amount of straight time and overtime hours Moncrief worked, and the statute of limitations period in this case if Defendants did not prevail on their exemption defenses.  Defendants challenge the

accuracy of Moncrief's respective recollections and estimations of overtime hours worked as claimed in this case.  The range of possible recovery would also be reduced substantially (by approximately ten months to only one or two weeks) if Moncrief were unable to prove that Defendants' alleged violation of the FLSA was "willful," as required in order to extend the statute of limitations for recovery from two to three years preceding the date Moncrief filed her claims in this civil action.

As stated above, according to Defendants' calculations of maximum potential liability for damages, Moncrief would only be entitled to recover $4,009.56 in back pay and full liquidated damages on her FLSA claims even if Moncrief succeeded in overcoming Defendants' exemption and willfulness defenses, as informed by her estimated or "projected" overtime hours worked during her period of time classified as a non-exempt employee.  Moncrief contends that her maximum possible recovery would be much higher if the jury credits her with all of her estimated hours worked and further determines that she was not paid for all of her hours worked, including overtime hours, and that as a result Defendants willfully violated the FLSA, resulting in a three-year statute of limitations period, instead of a two-year FLSA statute of limitations period.

The Settlement provides Plaintiff with a recovery greater than the maximum possible measure of damages that Defendants contends Plaintiff could ever be awarded in this case but less than the maximum possible measure of damages that Plaintiff contends she could be awarded. Therefore, Plaintiff's recovery is within the range of possible recovery amounts that should be approved as fair.  Indeed, the settlement payment of $9,500 net of fees and costs to Moncrief is more than 230% of the $4,009.56 maximum possible net recovery amount that Defendants contend Moncrief would be entitled to recover even if the jury credited every estimated overtime hour claimed in this lawsuit, for the full three-year recovery period, with full liquidated damages at the time and one half calculation, for her time worked as Lead Cook (Defendants contend the amount Moncrief could recover for "off the clock" hours worked as Line Cook is zero).

6. Counsels' Opinions.

Based on what the Parties learned through discovery and from extensive research and investigation, the Parties negotiated a fair settlement for Moncrief.  By settling, Moncrief avoids the risks of not establishing liability at trial and the possibility of an adverse cost judgment under Fed. R. Civ. P. 54 (and/or due to Defendants' unaccepted Offer of Judgment under Fed. R. Civ. P. 68), avoids

substantial and indefinite delay in payment involved in having to wait for trial and any appeals, and avoids potential adverse determinations on damages such as rejection or reduction of the hours claimed or reduction of the calculation of overtime damages and/or liquidated damages arising from the number of overtime hours proven.  Finally, Moncrief was only required to provide a limited scope release expressly limited to only her individual claims under the FLSA and the pendent state law claims for payment of hours worked and damages/fees arising therefrom up to the date of the Agreement, and received in return a mutual release from Defendants of any claims arising out of or related to Moncrief's claims released in the Agreement.   Defendants' and Moncrief's counsel therefore recommended acceptance of this settlement.

## II.    APPROVAL OF PAYMENT OF ATTORNEY'S FEES

The Agreement provides that Defendants shall pay Moncrief's attorney's fees in the amount of $19,000, which includes costs, to be approved by this Court.[3]

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorney's fee to be paid by the

---

[3] Moncrief's recoverable costs include, among other costs, the $400 filing fee and the $219 process server fees for service on two defendants, one of which was served on an individual residing out of state and required multiple service attempts.

defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are therefore mandatory for prevailing plaintiffs in FLSA cases.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought."  *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  In the instant action, Moncrief stands to recover a settlement payment net of fees and costs that is well in excess of the amount to be awarded if Moncrief recovered the full amount of hours claimed but Defendants succeeded on their willfulness defense. Thus, Moncrief has succeeded on significant claims, and Moncrief's counsel is therefore entitled to payment of her attorney's fees and costs in this action by Defendants in the amount stated in the Agreement.

This was an individual overtime case rather than a collective action under the FLSA, and the Agreement specifically provides for a payment amount to Moncrief for her overtime and liquidated damages, and a separate payment to Moncrief's counsel for attorney's fees and costs incurred in this action.  Therefore, as a district court within this Circuit recognized in *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005), the Court is not required to determine the amount of

the fee award, or to assess the reasonableness of the amount agreed upon by the

Parties:

> The FLSA does not require the court to assess the fairness
> of an agreed payment of attorneys' fees in settling an
> individual action. Indeed, the purpose of the fairness
> review is to ensure that an employer does not take
> advantage of an employee in settling his claim for wages,
> and not to ensure that the employee does not overcharge
> the employer. *See Lynn's Food Stores*, 679 F.2d at 1354.
> In an individual FLSA claim, where separate amounts are
> set forth for the payments of unpaid wages and payments
> for attorneys fees, the Court has greater flexibility in
> exercising its discretion in determining the reasonableness
> of the attorneys' fee.

Moreover, because Defendants have agreed to, and do not oppose the amount

(or reasonableness of the amount) of the attorney's fees to be paid to Moncrief'

counsel,[4] the Court need not conduct an evidentiary inquiry into the reasonableness

---

[4] (Agreement, Section D: ". . . Defendants do not oppose and agree not to oppose the
amount (or the reasonableness of the amount) of Moncrief's attorneys' fees to be
paid to Moncrief's Counsel out of the total Settlement Payment."). *Cf., Waters v.
Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n. 4 (11th Cir. 1999) (discussing
"clear sailing" agreements generally). Federal courts have made clear that these
"clear sailing" agreements are commonplace and proper in settling this type of case.
*See, e.g.*, *Malchman v. Davis*, 761 F.2d 893, 905 at n.5 (2d Cir. 1985) ("But where,
as here, the amount of the fees is important to the party paying them, as well as to
the attorney recipient . . . an agreement 'not to oppose' an application for fees up to
a point is essential to completion of the Settlement, because the defendants want to
know their total maximum exposure and the plaintiffs do not want to be
sandbagged.") Further, where, as here, the total settlement payment in an individual

of the hourly rate charged by Moncrief's counsel or the amount of the total fees incurred. *See Dail,* 391 F. Supp. 2d at 1147 (holding that because defendant joined in the motion for approval of the settlement amounts, "[t]he Court, therefore, finds it unnecessary to inquire into the reasonableness of the hourly rate charged by Plaintiff's counsel, and accepts the Parties' stipulation as to the reasonableness of the attorneys' fees and costs."). If, however, the Court requires a fee petition or other submission for the purposes of conducting a lodestar cross-check on the attorney's fees and costs to be paid to Moncrief's counsel in this settlement, Moncrief respectfully requests the opportunity to supplement this joint motion with the required submittal.

## **CONCLUSION**

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court enter the Order attached hereto as Exhibit B approving the Agreement attached hereto as Exhibit A.

Respectfully submitted this 11th day of October, 2016.

---

action includes defendants' additional payment for fees and costs under 29 U.S.C. § 216, the fees and costs cannot be strictly viewed as a deduction from the plaintiff's award, as is the case in a common fund class action settlement.

18

_s/ C. Andrew Head_
C. Andrew Head
Georgia Bar No. 341472
HEAD LAW FIRM, LLC
1170 Howell Mill Road, NW
Suite 305
Atlanta, Georgia 30318
Telephone: (404) 924-4151
Facsimile: (404) 796-7338
Email: ahead@headlawfirm.com

*Attorneys for Plaintiff*

_s/ Janine D. Willis_
John R. Lowery
Georgia Bar No. 460175
Janine D. Willis
Georgia Bar No. 390356
MOZLEY, FINLAYSON & LOGGINS, LLP
One Premier Plaza
5605 Glenridge Drive
Suite 900
Atlanta, GA 30342
Telephone: (404) 256-0700
Facsimile: (404) 250-9355
jlowery@mfllaw.com
jwillis@mfllaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I certify that this document was prepared in compliance with LR 7.1, NDGa.

This document was prepared in Times New Roman 14-point font.

_s/ C. Andrew Head_
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 11, 2016, the foregoing JOINT MOTION FOR STIPULATED JUDGMENT APPROVING FLSA SETTLEMENT AGREEMENT was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

John R. Lowery
Janine D. Willis
MOZLEY, FINLAYSON & LOGGINS, LLP
One Premier Plaza
5605 Glenridge Drive
Suite 900
Atlanta, GA 30342

*s/ C. Andrew Head*
C. Andrew Head
Georgia Bar No. 341472
HEAD LAW FIRM, LLC
1170 Howell Mill Road, NW
Suite 305
Atlanta, Georgia 30318
Telephone: (404) 924-4151
Facsimile: (404) 796-7338
Email: ahead@headlawfirm.com

*Attorneys for Plaintiff*